# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 15-1219V
Filed: January 17, 2018
TO BE PUBLISHED

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| LINDSEY JOHNSEN, * | |
| * | |
| Petitioner, * | |
| v. * | Attorneys' Fees and Costs; |
| * | Reasonable Basis; Special |
| SECRETARY OF HEALTH * | Processing Unit ("SPU") |
| AND HUMAN SERVICES, * | |
| * | |
| Respondent. * | |
| * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Stephanie Ann Schmitt,[1] Krueger & Hernandez S.C. (Middleton), Middleton, WI, for petitioner.*
*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION ON ATTORNEYS' FEES AND COSTS[2]

**Dorsey,** Chief Special Master:

On October 19, 2015, Lindsey Johnsen ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act" or "Program"). Petitioner alleged that she sustained injuries resulting from the influenza vaccination she received on October 31, 2012. Petition at 1, ¶¶ 2, 6. Specifically, petitioner alleged that she suffered "muscle atrophy and a mid-line deltoid depression" caused in fact by the influenza vaccination.

---

[1] As explained in this decision, until Ms. Schmitt entered her appearance on October 26, 2017, Mark L. Krueger, was attorney of record in this case.

[2] Because this decision contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

*Id.* at 1, ¶ 6.  The case was assigned to the Special Processing Unit of the Office of Special Masters.

On January 19, 2017, petitioner filed a joint stipulation of dismissal, acknowledging she "[had] not submitted sufficient evidence to support her claim that her injury was caused by her vaccination."  (ECF No. 40).  The undersigned dismissed petitioner's claim without prejudice pursuant to Vaccine Rule 21(a).  Order Concluding Proceedings, filed Jan. 23, 2017 (ECF No. 41).

On March 6, 2017, petitioner filed a motion for attorneys' fees and costs, requesting an award of $20,317.02, for work performed by petitioner's counsel at the time, Mr. Mark Krueger, and others at his firm, Krueger & Hernandez, S.C.  Motion for Attorneys' Fees and Costs ("Pet. Motion") at 5 (ECF No. 42).  Arguing that there was no reasonable basis to file or pursue this claim, respondent opposed petitioner's request.  Respondent's Response to Pet. Motion ("Res. Response"), filed Mar. 23, 2017, at 21-22 (ECF No. 43).  Petitioner filed a reply on March 30, 2017.  Petitioner's Reply to Res. Response ("Pet. Reply") (ECF No. 44).

While the motion for attorneys' fees and costs was pending, in early May 2017, Mr. Krueger passed away.  On October 26, 2017, another attorney at Mr. Krueger's firm, Stephanie Schmitt, was substituted as attorney of record.  *See* Consented Motion to Substitute Counsel of Record, filed Oct. 26, 2017 (ECF No. 46).  On November 20, 2017, Ms. Schmitt filed a status report, indicating petitioner incurred no out-of-pocket expenses.  (ECF No. 47).

Although an extremely close call, the undersigned finds a reasonable basis for the claim existed until late August 2016.  The undersigned **grants in part** petitioner's motion for attorneys' fees and costs, awarding **$11,357.94**.

## I.     Relevant Procedural and Medical History

The billing records show that petitioner met with Mr. Krueger to discuss her claim more than two years prior to the expiration of the Vaccine Act's statute of limitations.[4]  *See* 1st Attachment to Pet. Motion at 5 (entry dated 9/3/13).  Following that meeting, a paralegal at Mr. Krueger's law firm, Renee Nehring, sought medical records from petitioner's primary care provider.  *See id.* (entries dated 9/4/13 through 10/15/13).  The billing records indicate Mr. Krueger and Ms. Nehring also spoke to petitioner and Dr. Steinman, a frequent expert in vaccine cases, regarding treatment of petitioner's condition and a current assessment of her muscle damage.  *See id.* (entries dated 11/21/13 & 11/22/13).  In late October 2013, petitioner provided Ms. Nehring with photographs of her shoulder injury.  *See id.* (entries dated 10/22/13 & 10/31/13).

---

[4] Under the Vaccine Act, for a vaccine administered after October 1, 1988, "no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." § 16(a)(2).  Petitioner received the vaccination alleged as causal on October 31, 2012, met with Mr. Krueger on September 3, 2013, and filed her petition on October 19, 2015.

No work was performed on petitioner's claim from late November 2013 until April 2014. In April 2014, Ms. Nehring spoke to petitioner about her medical treatment, asking if she had seen a neurologist. *See* 1st Attachment to Pet. Motion at 5 (entry dated 4/16/14).

During the next three months, Ms. Nehring spent .6 hours seeking petitioner's medical records. *See id.* (entries dated 5/21/14, 6/10/14, & 7/22/14, reflecting .2 hours of work each). Medical records from the Dean Clinic Baraboo Primary Care ("Dean Clinic") were received in August 2014. *See* 1st Attachment to Pet. Motion at 6 (entry dated 8/25/14) (describing the review performed by Mr. Krueger's son, Andrew Krueger).[5] These medical records consist of four visits to the Dean Clinic from February 27 thru July 30, 2013. *See* Exhibit 3 (ECF No. 8-3). A year later, petitioner obtained records referred to as "medical records from Dean Medical Center." *See* 1st Attachment to Pet. Motion at 6 (entry dated 9/1/15).[6] A review of these records show they include the same records already obtained as well as additional medical records from the Dean Clinic and other clinics in that same network. *See* Exhibit 2 (ECF No. 8-2). These records show treatment in 2009 and 2010, a gap in care from late July 2010 until a record regarding petitioner's vaccination in late October 2012, and treatment subsequent to vaccination until late July 2013.

While the medical records were collected, from September 2014 through October 2015, Mr. Krueger and others at his law firm continued to ask petitioner about her medical treatment and current condition. *See* 1st Attachment to Pet. Motion at 5 (entries dated 9/8/14, 1/14/15, 1/15/14, 1/20/14, 3/9/15, 9/16/15, 9/17/15, & 10/8/15). However, there is no indication in the billing records that petitioner ever saw a specialist or obtained a current assessment of her condition, and Mr. Krueger did not provide a reason why the matter was not pursued further.

On September 15, 2015, Andrew Krueger began drafting the petition and an affidavit from petitioner in support of her claim. *See* 1st Attachment to Pet. Motion at 6 (entry dated 9/15/15). While drafting these documents, he and Ms. Nehring spoke to petitioner on several occasions regarding the petition, affidavit, and her current condition. *See id.* at 6-7 (entries dated 9/16/15 through 10/8/15). Mr. Krueger performed a final review of these documents on October 14, 2015. *See id.* at 7 (entry dated 10/14/15). The petition was filed the next day, and petitioner's affidavit and records from the Dean Clinic and Dean Medical Center were filed approximately two weeks later. *See id.* at 7 (entries dated 10/15/15 & 11/2/15).

To support her claim, petitioner cites entries in medical records from visits on March 25, and May 30, 2013. Petition at ¶¶ 3-4 (citing Exhibit 3 at 4, 10). At the March 25, 2013 visit, petitioner described pain which began one week earlier when doing

---

[5] Andrew Krueger is an attorney working at Mr. Krueger's firm. On August 25, 2014, he spent 1.0 hours summarizing these records. To avoid any confusion, Andrew M. Krueger will be referenced by his full name. Thus, any mention of Mr. Krueger refers to Mark. L. Krueger.

[6] On September 1, 2015, Andrew Krueger spent 1.80 hours summarizing these records.

push-ups. Exhibit 3 at 5. At that time, she also noticed a defect, described as a divot, in her right deltoid. *Id.* Her treating physician, Micah Puyear, D.O., noted the defect in petitioner's muscle during his examination. *Id.* Although he indicated petitioner's pain could be caused by "possible tendonitis," he thought the muscle defect may be due to "fat/muscle atrophy from remote flu vaccination vs. muscle avulsion." *Id.* at 6. Dr. Puyear prescribed rest, ice or heat, and anti-inflammatory medication, instructing petitioner to schedule a follow-up appointment in a couple of weeks if not improved. *Id.* When petitioner returned on May 30, 2013, she saw Nathan P. Vakharia, M.D. *Id.* at 12. Dr. Vakharia noted that petitioner stated she had experienced no injury or trauma other than an influenza vaccine in October 2012. *Id.* at 10.

There are no other entries regarding a potential cause for petitioner's injury in the medical records obtained at this point in time. However, there were entries indicating that additional records were outstanding. For example, there is a gap in treatment from July 27, 2010 until an entry regarding petitioner's October 31, 2012 influenza vaccination. Exhibit 2 at 79-80. Additionally, there are entries indicating petitioner received care at the Veteran's Administration, including a notation in April 2009 that she will be receiving care there in the future. *Id.* at 42. Barely one page in length, petitioner's affidavit stated that she received an influenza vaccine on October 31, 2012, noticed a depression in her right arm on March 1, 2013, and continued to suffer residual effects from the vaccination. Exhibit 4 at ¶¶ 2-4. Petitioner described her current condition as a weakness and often "achy feeling" in her right arm. *Id.* at ¶ 6.

During the initial status conference held on December 2, 2015, respondent's counsel raised the issue of missing medical records. *See* Order, issued Dec. 4, 2015, at 1 (ECF No. 10). In particular, she mentioned that petitioner needed to file a record of vaccination, the results of an MRI, any outstanding medical records such as those from treatment received from July 2010 until late October 2012, and records from the birth of her child. *See id.*

On March 1, 2016, petitioner filed another record of vaccination and medical records from St. Clare Hospital and the William S. Middleton Memorial Veterans Hospital ("VA Hospital"). *See* Exhibits 5-7 (EF No. 12). Petitioner requested additional time to file a second affidavit to clarify the gaps in and medical treatment received by petitioner. Motion for Additional Time, filed Mar. 3, 2016 (ECF No. 15). The billing records show Ms. Nehring began drafting this affidavit in late January 2016, while checking on the status of the VA Hospital medical records. *See* 1st Attachment to Pet. Motion at 7 (entry dated 1/27/16).

The St. Clare Hospital medical records contain the results of petitioner's MRI. Those results shows "very mild edema, . . . suggestion of thinning of the subcutaneous fat reflect[ing] atrophy or scarring related to the injection, . . . [and] minimal excess fluid in the subacromial/subdeltoid bursa." Exhibit 6 at 17-18. The report refers only to a "previous intramuscular injection." *Id.* at 17. It does not specify whether that reference is to petitioner's October 31, 2012 influenza vaccination. The medical records from the VA Hospital include records from visits on March 13 and 18, 2013, which mention a

4

Kenalog injection petitioner received in December 2012.  Exhibit 7 at 29-36.  However, the records do not indicate in which arm the Kenalog injection was given.

On April 12, 2016, petitioner sought additional time to file the second affidavit described in the March 3, 2016 extension request.  (ECF No. 18).  She added that she was also seeking pregnancy and birth records from additional medical facilities identified by petitioner.  *Id.*  The billing records show Ms. Nehring finalized petitioner's affidavit two weeks before this request, on March 29, 2016, and spent 2.4 hours discussing the affidavit with petitioner and Mr. Kruger in late March and early April 2016.  Thus, it is not clear why additional time for the affidavit was needed.  Since the undersigned was not privy to this information at the time, the motion was granted.  Non-pdf Order, issued Apr. 12, 2016.

The billing records show that for the next month and a half, Ms. Nehring spent time collecting additional medical records, which Andrew Krueger then summarized.  *See* 1st Attachment to Pet. Motion at 8-9 (entries dated from 4/12/16 through 5/31/16).  No time was spent on petitioner's affidavit.

On May 31, 2016, petitioner filed medical records from UW Health, Meriter Hospital, and Baylor Scott & White Medical Center.  *See* Exhibits 8-10 (ECF No. 19).  These records are from gynecology and obstetrics appointments, including the records from petitioner's 2012 pregnancy and birth of her child.  Petitioner again requested additional time to file the second, more detailed affidavit.  Motion for Additional Time, filed May 31, 2016 (ECF No. 21).  The undersigned allowed the additional time, but simultaneously ordered respondent to file a status report setting forth his tentative position regarding petitioner's claim.  *See* Non-pdf Order, issued June 3, 2016; Scheduling Order, issued June 3, 2016 (ECF No. 22).

Petitioner failed to file her affidavit by the June 30, 2016 deadline.  On July 12, 2016, respondent filed a status report requesting petitioner file medical records related to the Kenalog injection she received in December 2012, and any medical treatment she received that month.  (ECF No. 25).  Petitioner was ordered to file these outstanding medical records.  (ECF No. 26).

After petitioner requested additional time, a telephonic status conference was held with the OSM staff attorney managing this SPU case.  *See* Motion for Additional Time, filed Aug. 4, 2016 (ECF No. 27); Non-pdf Orders, issued August 12, 2016.  During the call, the staff attorney discussed the problems with petitioner's claim and the need for additional records.  First, the onset of petitioner's injury did not occur until more than four months after vaccination, and petitioner failed to mention her vaccination at that time, attributing her injury to other unrelated factors.  *See* Order, issued Sept. 2, 2016, at 1-2 (ECF No. 28).  Second, petitioner received a Kenalog injection in December 2012, although it was not clear in which arm that injection was given.  *See id.* at 2.

5

In September 2016, petitioner filed an affidavit and medical records from the VA Hospital in Texas.[7]  *See* Exhibits 11-14 (ECF Nos. 29, 31).  Although similar to the basic affidavit filed within two weeks of the petition, in this affidavit, petitioner acknowledged that she received a Kenalog injection in her right deltoid on December 24, 2012, in addition to the influenza vaccine she received on October 31, 2012.  Exhibit 12 at ¶¶ 2-4.  The billing records show Mr. Krueger drafted this affidavit in early September 2016.  *See* 1st Attachment to Pet. Motion at 10 (entries dated 9/7/16 through 9/12/16).  It appears the affidavit prepared by Ms. Nehring and reviewed by Mr. Krueger in late March and early April 2016 was never filed.

The records from the VA Hospital in Texas show that petitioner was given a Kenalog injection in her right arm on December 24, 2012, for treatment of a rash.  Exhibit 11[8] at 1, 3.  Additionally, the records show that on October 24, 2013, approximately seven weeks after petitioner first contacted Mr. Krueger, but long before the petition was filed, petitioner requested a consult from with a specialist about the indention in her right deltoid muscle.  Exhibit 13 at 199-200.  She was seen by Dr. David Allton at the VA Hospital in Texas on November 4, 2013.  *Id.* at 556-59.  Dr. Allton informed petitioner that her injury was likely caused by the Kenalog injection she received on December 24, 2012, rather than the influenza vaccination she received in October 2012.  *Id.* at 558.  In the medical record, Dr. Allton reported "I advised [petitioner] that I was unaware of influenza vaccinations causing a subcutaneous atrophy, but that it is well known and described that Kenalog injections can caused this type of site reaction."  *Id.* at 559.  He added that petitioner "seems to still feel that it is possibly related to [the] influenza [vaccination she received in October 2012]; however, the timeline [indicates] that this [subcutaneous atrophy] is related to Kenalog [injection]" which she received "in presumably the same area since she reports she gets all vaccinations in her [right] arm."  *Id.*  Dr. Allton concluded that the fact that "Kenalog is known to have this reaction makes Kenalog by far the more likely etiology."  *Id.*

Six weeks after Dr. Allton's records were filed, respondent filed a status report indicating he wished to file a Rule 4(c) report and was not interested in participating in settlement discussions.  Status Report, filed Oct. 31, 2016 (ECF No. 34).  On December 1, 2016, respondent filed his Rule 4(c) report opposing compensation in this case.  (ECF No. 36).

After reviewing respondent's Rule 4 report, the undersigned directed the staff attorney to inform the parties that she was concerned the claim lacked a reasonable basis.  *See* Informal Remark, dated Dec. 12, 2016.  Petitioner's counsel requested 30 days to confer with his client to determine if she wished to continue with her claim.  *See* Order, issued Dec. 12, 2016 (ECF No. 37).  On January 5, 2017, petitioner filed a status reporting indicating she did not intend to continue with her claim.  (ECF No. 38).  She

---

[7] This facility will be referred to as the "VA Hospital in Texas" in order to distinguish it from the VA Hospital in Wisconsin.  Any reference to the VA Hospital without a geographical location will be to the VA Hospital in Wisconsin.

[8] This same record can be found in exhibit 13 at 593-597.

6

filed a joint stipulation of dismissal on January 19, 2017, and the undersigned issued an order concluding proceedings a few days later. (ECF Nos. 40-41).

Less than two months later, petitioner filed a motion for attorneys' fees and costs. Respondent filed a response, and petitioner filed a reply. Respondent disputes petitioner's claim that reasonable basis existed to file and continue to prosecute this claim. The arguments advanced by the parties are discussed in detail in Section III.

The issue is ripe for adjudication.

## II.   Legal Standards for Reasonable Basis and Good Faith

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorneys' fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). As Judge Lettow noted in *Davis*, "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 634 (2012). It may be the only federal fee-shifting statute that permits unsuccessful litigants to recover fees and costs.

However, "Congress did not intend that every losing petition be automatically entitled to attorneys' fees." *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). The Vaccine Act requires an unsuccessful litigant to establish that their petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought before attorneys' fees and costs may be awarded. § 15(e)(1).

"[T]he 'good faith' requirement . . . is a subjective standard that focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Petitioners are entitled to a presumption of good faith. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996); *see also Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993).

This presumption does not extend to reasonable basis which must be affirmatively demonstrated by the petitioner. *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011). "In contrast to the subjective standard afforded the 'good faith' requirement, the 'reasonable basis' requirement 'is objective, looking not at the likelihood of success [of a claim] but more to the feasibility of the claim.'" *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma*, 1993 WL 496981, at *1). "Though the petitioner's burden to establish a reasonable basis is lower than the preponderance of the evidence standard the plaintiff must establish to recover on the merits of the claim, a petitioner 'must furnish some evidence in support' of the claim." *Curran v. Sec'y of*

7

*Health & Human Servs.,* 130 Fed. Cl. 1, 5 (2017) (quoting *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 288 (2014)).  Evidence often required to establish entitlement to compensation, such as the report of a medical expert, is not required to establish reasonable basis.  *Carter v. Sec'y of Health & Human Servs.,* 132 Fed. Cl. 372, 382 (2017); *Bilodeau v. Sec'y of Health & Human Servs.,* No. 14-72V, 2017 WL 2417926, at *8 (Fed. Cl. Spec. Mstr. May 9, 2017).

When determining if reasonable basis exists, many special masters and U.S. Court of Federal Claims judges employ a totality of circumstances test.[9]  The factors to be considered under this test include "the circumstances under which the petition is filed, any jurisdictional question, the factual basis and medical support for the petition, and any other legal issues that may arise."  *Cottingham,* 2017 WL 4546579, at *6 (citing *Scanlon v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 629, 633-34 (2014)); *accord. Rehn,* 126 Fed. Cl. at 92; *Chuisano,* 116 Fed. Cl. at 288.

Attempts to limit this inquiry to a solely evidence-based standard, while ignoring other factors such as the circumstances at the time of the petition's filing, have been rejected.  *Cottingham,* 2017 WL 4546579, at *5; *Chuisano,* 116 Fed. Cl. at 287; *see also Graham,* 124 Fed. Cl. at 579 (affirming the special master's analysis because he did not rely solely on medical evidence but also considered counsel's pre-filing investigation).  For instance, leniency has been shown when the statute of limitations was about to expire or if the petition was originally filed *pro se.  See Turner,* 2007 WL 4410030, at *6.  In such situations, the bar for establishing reasonable basis can be lowered.  Allowances have also been made for "skeletal" petitions, where reasonable basis is later reinforced with medical records and expert opinions.  *Turpin,* 2005 WL 1026714, at *2.  Petitioner's counsel in these cases often do not have the time needed to properly research petitioner's claim prior to filing the petition.[10]

---

[9] Multiple judges at the U.S. Federal Court of Claims have affirmed instances when the special master employed this test or remanded a decision when the special master did not.  *Chuisano,* 116 Fed. Cl. at 288; *Graham v. Sec'y of Health & Human Servs.,* 124 Fed. Cl. 574, 579 (2015); *Rehn v. Sec'y of Health & Human Servs.,* 126 Fed. Cl. 86, 91-92 (2016); *Allicock v. Sec'y of Health & Human Servs.,* 128 Fed. Cl. 724, 726 (2016); *Curran*, 130 Fed. Cl at 5; *Cottingham v. Sec'y of Health & Human Servs.,* --- Fed. Cl. ---, No. 15-1291V, 2017 WL 4546579, at *6 (Fed. Cl. Spec. Mstr. Oct. 12, 2017*).*  Specials master have utilized this test in the majority of recent decisions.  *Miller v. Sec'y of Health & Human Servs.,* No. 13-914V, 2016 WL 25867000, at *3 (Fed. Cl. Spec. Mstr. Apr. 12, 2016); *Brannigan v. Sec'y of Health & Human Servs.,* No. 14-675V, 2016 WL 3886297, at *6 (Fed. Cl. Spec. Mstr. June 17, 2016); *Bush v. Sec'y of Health & Human Servs.,* No. 15-476V, 2016 WL 3905608, at *3 (Fed. Cl. Spec. Mstr. June 17, 2016); *Solomon v. Sec'y of Health & Human Servs.,* No. 14-748V, 2016 WL 8257673, at *2 (Fed. Cl. Spec. Mstr. Oct. 27, 2016); *Walden v. Sec'y of Health & Human Servs.,* No. 15-685V, 2017 WL 2465720, at *5 (Fed. Cl. Spec. Mstr. May 5, 2017).

[10] *See McNett v. Sec'y of Health & Human Servs.*, No. 99-684V, 2011 WL 760314, at *8 (Fed. Cl. Spec. Mstr. Feb. 4, 2011) (finding a review of the billing records showed petitioner's counsel "had no time to request medical record, let alone any time to review [them]"); *Hamrick v. Sec'y of Health & Human Servs.,* No. 99-683V, 2007 WL 4793152, at *6 (Fed. Cl. Spec. Mstr. Nov. 19, 2007) (emphasizing respondent's failure "to recognize that the looming statute of limitations prevented a thorough examination of the case"); *Turner,* 2007 WL 4410030, at *5 (finding a claim filed on the eve of the running of the statute of limitations "may be supported by less information than would be expected if counsel had more time to conduct a pre-filing investigation of the factual underpinnings and the medical basis for a vaccine claim").

However, any reasonable basis analysis should not discount the need for evidentiary support for a claim. The Federal Circuit recently emphasized the need to establish a factual basis in *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). At first glance, this decision appears to undermine the totality of circumstances test. However, a closer examination of the facts in that case reveals that supposition could be arrived at only if an overly broad reading of the Circuit's decision is employed.

In *Simmons,* the petitioner contacted counsel more than two years prior to the statute of limitations deadline, providing only evidence that he had received the vaccination alleged as causal. 875 F.3d at 634. Petitioner then disappeared, only to resurface nearly two years later, shortly before the statute of limitations expired. *Id.* Emphasizing the ethical duty of petitioner's counsel to ensure the petition was timely filed, the special master determined the claim possessed a reasonable basis. *Id.* at 635. Concluding that the special master misapplied the law because she based her finding of reasonable basis solely on counsel's need to timely file the petition, the Circuit upheld the Claims Court's reversal. *Id.* at 636. The Circuit held that an impending statute of limitations deadline cannot be used to establish a reasonable basis for a claim which would otherwise not exist. *Id.*

"Although a claim may have may have had a reasonable basis, at the time of its filing, reasonableness may later come into question if new evidence becomes available or the lack of supporting evidence becomes apparent." *Chuisano*, 116 Fed. Cl. at 288 (citing *Perreira*, 33 F.3d at 1377). "Assessment of reasonable basis is not a static, one-time inquiry at the time of filing a petition. Rather, petitioners' counsel have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham*, 2017 WL 4546579, at *5.

### III.    The Parties' Arguments

In her motion for attorney's fees and costs, petitioner argues that "a reasonable basis existed through the time the Petition was dismissed" on January 27, 2017. Pet. Motion at 4. Mentioning that the petition was filed on the eve of the expiration of the Vaccine Act's statute of limitations (*id.* at 2), she asserts that the medical records available at that time show that "the only trauma or explanation for Petitioner's shoulder injury was the influenza vaccination" (*id.* at 1). Petitioner acknowledges the record from her December 24, 2012 visit to the Veteran's Hospital in Texas shows that she received a Kenalog injection in her right arm, but maintains that record was unknown and not received by Mr. Krueger until September 15, 2016. *Id.* at 2. She contends that the medical records from the Dean Clinic and Dean Medical Center were the only medical records of post-vaccination treatment known to Mr. Krueger at the time the petition was filed (*id.* at 3) and insists that "[i]t wasn't until after the Petition was filed that it was found that Petitioner was treated at additional facilities" (*id.* at 4).

Respondent opposes petitioner's motion for attorneys' fees and costs, asserting that "the petition in this case was filed without a reasonable basis, and a reasonable basis for its filing was never established during the pendency of the claim." Res. Response at 1. He maintains that "the medical records provide no evidence to support petitioner's claim that the depression in her right shoulder is vaccine-related, [and] [p]etitioner also did not file any other evidence that a flu vaccine could cause the type of injury she alleges." *Id.* at 19. Respondent contends that "[o]nce her medical records were collected, it became clear that there was a strong alternative cause which demonstrated that petitioner's claim was not viable." *Id.* While disagreeing that the conduct of counsel is relevant when determining if reasonable basis exists, respondent nevertheless argues that "[f]undamental due diligence required counsel [to ensure] that he could support the claims alleged in the petition before it is filed." *Id.* at 20. He further argues that the looming statute of limitations did not prevent Mr. Krueger and others at his firm "from conducting an adequate investigation into the claim . . . [since] he was contacted by petitioner almost two and a half years before the statute would have run." *Id.* at 20 n.14. Respondent insists that it is counsel's duty "to make sure that his client's claims are supported by evidence and to avoid . . . frivolous litigation." *Id.* at 21.

Petitioner addressed respondent's arguments in her reply. Emphasizing the weight given to the opinions of treating physicians, petitioner argues that Dr. Puyear's statement on March 25, 2013[11] was sufficient to establish reasonable basis. Pet. Reply at 2 (citing *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1326 (Fed. Cir. 2006)). Petitioner asserts Mr. Krueger performed additional due diligence by conducting medical research which was not filed "to further assure they would be able to link the vaccine and injury." Pet. Reply at 2. She maintains that the references to treatment at the VA Hospital cited by respondent would not have raised red flags regarding any missing medical records as those references occurred in 2009 and 2010 and concerned issues related to her mental health. *Id.* at 3. Finally, petitioner insists "the reference to an alternative cause, the Kenalog injection, does not mean that Petitioner ultimately would be unable to prove causation." *Id.* at 4.

## IV.  Analysis

Respondent has not challenged petitioner's request on the grounds that she lacked good faith, relying solely on his argument that there was no reasonable basis to file this claim. Moreover, the medical records indicate petitioner was not a thorough or accurate historian. It is likely that she was not forthcoming with information Mr. Krueger would have needed to realize there was a substantial issue with petitioner's claim. Thus, the undersigned will focus her analysis on the issue of reasonable basis.

To establish a reasonable basis for petitioner's claim, Mr. Krueger relies on Dr. Puyear's statement, provided on March 25, 2013, that the defect in petitioner's muscle

---

[11] Petitioner quotes the portion of the medical record where Dr. Puyear states petitioner's injury may have been caused by "fat/muscle atrophy from remote flu vaccine or muscle avulsion." Pet. Reply at 2 (quoting Exhibit 3 at 6).

10

could be due to fat or muscle avulsion from her remote flu vaccination.  Although not a particularly strong statement, the opinion clearly originates from Dr. Puyear.  This distinguishes it from statements, so often seen in medical records, which are provided by the patient and therefore, more appropriately considered to be part of a contemporaneously provided medical history.   The notation found in petitioner's May 30, 2013 visit to Dr. Vakharia is an example of this later type of statement.  As a treating physician, Dr. Puyear's opinion should be given substantial weight.  *See Curcuras,* 993 F.2d at 1528; *Capizzano*, 440 F.3d at 1326.  Recognizing the time period between vaccination and injury, Dr. Puyear, nevertheless, indicates a causal link is possible.

Despite maintaining that the conduct of petitioners' counsel is not relevant when determining if reasonable basis exists, respondent argues that, if considered, Mr. Krueger's lack of due diligence undercuts any finding of reasonable basis.  The undersigned agrees that petitioners' counsel are expected to make a pre-filing inquiry into a claim to ensure that it has a reasonable basis.  *See Turner,* 2007 WL 4410030, at *6-7; *Silva v. Sec'y of Health & Human Servs.*, No. 10-101V, 2012 WL 2890452, at *13 (Fed. Cl. Spec. Mstr. June 22, 2012), *aff'd* 108 Fed. Cl. 401 (2012) (finding "[t]he attorneys essentially did not investigate [petitioner's] case properly before filing it").  As stated in *Simmons,* even an impending statute of limitations deadline does not excuse the need for a factual basis to support petitioner's claim.  875 F.3d at 636.  Here, Mr. Krueger and others at his firm had ample time to research the factual basis for petitioner's claim.

While crediting Mr. Krueger's argument that the missing medical records from the VA Hospital in Wisconsin appeared to be irrelevant and recognizing that petitioner may not have been forthcoming with facts regarding her medical history and treatment, the undersigned still finds that Mr. Krueger could have and should have performed a more thorough examination of the facts in this case. This shortcoming is what makes the issue of reasonable basis such a close call.  However, the undersigned finds any lack of due diligence on the part of Mr. Krueger and others at his firm is not sufficient to undermine the reasonable basis provided by Dr. Puyear's statement.  Thus, by the barest of measures, there was sufficient evidence to support petitioner's claim in late 2015, when the petition was filed.

However, by March 2016, there was sufficient evidence to question if reasonable basis to pursue the claim had ceased to exist.  Medical records from the VA Hospital in Wisconsin, filed on March 1, 2016, indicated petitioner received a Kenalog injection closer in time to her injury, though it was not clear if the injection had been received in petitioner's injured arm.

During this same time period, petitioner's more detailed affidavit, regarding her medical history and treatment, was finalized but never filed.[12]  Given the amount of time

---

[12] The billing records show Ms. Nehring drafted the affidavit in late March 29, 2016, and spent time revising the affidavit, after discussions with petitioner and Mr. Krueger, in late March and earl April 2016.  *See* 1st Attachment to Pet. Motion at 8 (entries dated 3/21/16 through 4/7/16).

11

spent coordinating with petitioner and drafting the affidavit, it can be assumed that additional information, relevant to petitioner's claim, was obtained during this process. Still, it would be pure supposition to assume that petitioner recalled and conveyed information, such as the arm in which the Kenalog injection was administered, which would undermine the reasonable basis found earlier. The undersigned declines to engage in further speculation regarding the contents of this affidavit but will not pay the attorneys' fees and costs involved in its creation. *See supra* Section V (for a discussion of the attorneys' fees and costs found to be reasonable).

The undersigned finds that the evidence in the medical records, pointing to an intervening Kenalog injection, was sufficient to further erode but not negate the reasonable basis found to exist at the time the petition was filed. Still, these records provided enough proof to dictate that additional efforts be focused on determining the Kenalog injection site. Instead of pursuing this needed information, time was spent on other matters. For example, Ms. Nehring and Andrew Krueger spent 13 hours obtaining records from petitioner's pregnancy and birth of her child which occurred more than one year prior to the events in question. *See* 1st Attachment to Pet. Motion at 8 (entries dated 4/12/16 through 5/31/16). The undersigned will compensated only the hours spent to obtain medical records from the VA Hospital in Texas.

These records, reviewed in late August 2016 and filed in September 2016, established that petitioner received the Kenalog injection in her injured right arm. Additionally, they revealed that petitioner saw Dr. Allton on November 4, 2013, who opined that petitioner's injury was caused, not by the influenza vaccine received in October 2012, but by the Kenalog injection received in the same arm in December 2012. He stressed that the Kenalog injection was administered closer in time to petitioner's injury and is known to cause this reaction. Following the receipt of these medical records, it was evident that petitioner did not have a reasonable basis to pursue her claim. Petitioner voluntarily dismissed her claim almost five months after the records were received by Mr. Krueger, on January 19, 2017. Subsequent to August 2016, the undersigned will compensate only efforts expended to dismiss petitioner's claim and to finalize the motion for attorneys' fees and costs.

### V. Calculating Amount to be Awarded

Reasonable attorneys' fees and costs in Vaccine Act cases are determined using the lodestar approach, which begins with an assessment of a reasonable hourly rate multiplied by a reasonable number of hours expended in the case. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008.) The determination of the amount of reasonable attorneys' fees is within the special master's discretion. *See, e.g., Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993). Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as fees. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375. Special masters are entitled to rely on their own experience and understanding of the issues raised. *Wasson*

*v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991), *aff'd in relevant part,* 988 F.2d 131 (Fed.Cir.1993) (per curiam).

Petitioner requests the following hourly rates:

| Mark Krueger: | $300 | 2013-14 |
| | $385 | 2015-17 |
| Andrew Krueger: | $200 | 2013-17 |
| Renee Nehring: | $125 | 2013-14 |
| | $145 | 2015-17 |

*See* 1st Attachment to Pet. Motion at 11.  Recently, a colleague addressed a request for the same increased rates for Mr. Krueger and Ms. Nehring for work performed in 2015 and later.  *See Herrera v. Sec'y of Health & Human Servs.*, No. 15-651V, 2017 WL 1459002 (Fed. Cl. Spec. Mstr. Mar. 29, 2017).  The undersigned fully agrees with the analysis in *Herrera* and adopts the same reasoning in this case.  *Id. at* *2-3.  The undersigned will award attorneys' fees based upon the following hourly rates:

| Mark Krueger | $300 | 2013-14 |
| | $350 | 2015 |
| | $363 | 2016 |
| | $376 | 2017 |
| Andrew Krueger | $200 | 2013-17 |
| Renee Nehring | $125 | 2014 |
| | $135 | 2015 |
| | $140 | 2016-17 |

Applying these hourly rates to the work performed through March 3, 2016, when it became apparent that petitioner had received an intervening Kenalog injection, results in attorneys' fees in the amount of **$7,064.90**.  *See* 1st Attachment to Pet. Motion at 5-8 (entries from 9/3/13 through 3/3/16).

As previously stated, after that date, the undersigned will award fees only for work performed to determine the Kenalog injection site.  *See infra* Section IV.  Thus, the amount of attorneys' fees sought is reduced by the amounts billed for work performed to obtain petitioner's pregnancy and birth records and for any further work related to the second affidavit which was never filed.  *See* 1st Attachment to Pet. Motion at 8-9 (entries dated 3/21/16 through 5/31/16).  The undersigned will award fees for the efforts involved in obtaining, reviewing, and filing the medical records from the VA Hospital in Texas.  *See id.* at 9-10 (entries dated 6/9/16 through 8/24/16 & 9/15/16).  Payment of these amounts at the appropriate hourly rates increases the fees award by **$1,524.00**.

After late August 2016, the undersigned will award fees only for work regarding the dismissal of petitioner's claim and motion for attorneys' fees and costs. *See infra* Section IV. In order to properly dismiss petitioner's claim, Mr. Krueger and Ms. Nehring spent a total of 2.5 hours communicating with petitioner and respondent's counsel and filing the appropriate documents. *See* 1st Attachment to Pet. Motion at 11 (entries dated 12/12/16 through 1/19/17). This work results in a further award of fees in the amount of **$439.20**. Andrew Krueger then spent 9.6 hours preparing the motion for attorneys' fees and costs, and Mr. Krueger spent 1.2 hours reviewing the motion and accompanying documents. *See id.* (entries dated 1/26/17 through 3/1/17 (1st entry)).[13] The undersigned finds the hours of hours requested for work performed by Andrew Krueger unreasonable, but will award attorney fees for 5.0 hours of time expended by Andrew Krueger and the full time requested for Mr. Krueger's review. The award of attorneys' fees is further increased by **$1,451.20**. The undersigned will not award attorneys' fees for the .2 hours expended by Mr. Krueger to draft a notice not to seek review as it was not necessary in this case.[14]

With regard to the costs sought, the undersigned will award all but the costs expended in April and May 2016 to obtain petitioner's medical records from her 2012 pregnancy and birth of her child. As stated in Section IV, the undersigned determined it was only reasonable for petitioner to expend efforts determining whether petitioner received the intervening Kenalog injection in her injured arm during that time. The undersigned declined to award attorneys' fees for time spent obtaining, reviewing, and filing these records. Likewise, the associated costs will not be paid. The amount of costs sought, $1,509.52, is reduced by $630.88, resulting in costs awarded in the amount of **$878.64**.

## VI. Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought. § 15(e)(1). The undersigned finds good faith and reasonable basis until the evidence showed a more likely alternative cause, the Kenalog injection petitioner received in the same arm, closer in time to her injury. Additionally, the undersigned has reduced the hourly rates, time billed, and the costs sought to an amount deemed to be reasonable. These reductions result in an award of attorneys' fees in the amount of **$10,479.30** and attorneys' costs in the amount of **$878.64**.

---

[13] Although the first 3/1/17 entry indicates Mr. Kruger reviewed the decision regarding attorneys' fees and costs, the undersigned assumes this entry refers to the motion for attorneys' fees and costs.

[14] Per Vaccine Rule 21(a)(3), a voluntary dismissal does not result in a judgment but rather an order concluding proceedings which immediately closes the case.

**Accordingly, the undersigned awards a total of $11,357.94,**[15] **representing reimbursement for all attorneys' fees and costs, in the form of a check jointly payable to petitioner and petitioner's counsel, Stephanie Ann Schmitt.**

The clerk of the court shall enter judgment in accordance herewith.[16]

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master

---

[15] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir.1991).

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.